**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01022

FREVELYN CONCORDIA,

Plaintiff

v.

JEFFERSON COUNTY SCHOOL DISTRICT NO. R-1

Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Frevelyn Concordia ("Plaintiff"), by and through her attorneys, Miller & Law, PC, and for her Complaint and Jury Demand against the Defendant, Jefferson County School District No. R-1, states as follows:

### NATURE OF THE ACTION

This action is brought to redress the Defendant's violation of the Rehabilitation Act of 1973, 29 U.S.C. §701, *et seq.* (the "Rehabilitation Act")*,* and under section 504, 29 U.S.C. §794, in particular.  Specifically, Plaintiff alleges that, in violation of the Rehabilitation Act, Defendant engaged in unlawful employment practices on the basis of Plaintiff's gender, discriminating against her in connection with her pregnancy, then retaliating against her for having engaged in a protected activity.  Plaintiff also brings unpaid wage claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201-219 ("FLSA") and the Colorado Wage Act, C.R.S. §§8-4-101, *et seq.* ("CWA") for Defendant's willful violation of the FLSA and the CWA.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343 and the Rehabilitation Act, §§504 and 505, 29 U.S.C. §§794 and 794a.  This Court has pendent jurisdiction over Plaintiff's state law wage claim brought under the CWA, as that claim arises from the same nucleus of operative facts as Plaintiff's FLSA wage claim.  The unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## ADMINISTRATIVE PREREQUISTIES

2. To the extent that there were applicable procedural prerequisites for bringing Rehabilitation Act claims, Plaintiff complied with any such prerequisites for bringing this lawsuit before commencing the instant litigation.

3. On August 29, 2019 Plaintiff timely filed a charge of employment discrimination and retaliation with the Employment Opportunity Commission ("EEOC").

4. By final notice dated January 8, 2021, which she received on January 11, 2021, Plaintiff was issued a Notice of Right to Sue by the EEOC.

5. This Complaint has been timely filed on the first business day following the 90th day after Plaintiff's receipt of the EEOC's Right-to-Sue Notice.

## PARTIES

6. Plaintiff Frevelyn Concordia ("Ms. Concordia") is an individual resident of Colorado with a residential address of 19084 W. 85th Bluff, Arvada, CO 80007.

7. Defendant Jefferson County School District No. R-1 (the "District") is a duly and regularly organized public school district within the State of Colorado pursuant to C.R.S. § 22-32-101, and, as such, is a body corporate and political subdivision of the State of Colorado with authority to sue and be sued. The District is governed by the Board of Education of Jefferson County School District pursuant to C.R.S. § 22-32-103. The District employs more than 500 employees.

## GENERAL ALLEGATIONS

8. The District provides public education services to K-12 students in the Jefferson County area of Colorado.

9. Ms. Concordia was employed by the District as a paraprofessional from December 3, 2018 through August 16, 2019.

10. Ms. Concordia was hired by Laura Wilson, the Principal of the District's Three Creeks K-8 School (the "School") in Arvada, Colorado, into the position of Independence Support Paraeducator ("ISP"), working four (4) hours per day.

11. As an ISP, Ms. Concordia provided one-to-one support to a particular student receiving special education services through an Individualized Education Plan.

12. In April 2019 Ms. Concordia informed her supervisor, Ms. Wilson, that she was pregnant.

13. Several months after Ms. Concordia's disclosure of her pregnancy, the District changed her position from part-time to full-time.

14. On or about July 20, 2019, Matt Holmes (the former Dean and then current Assistant Principal at the School) informed Ms. Concordia that her position had become a full-

time position; Mr. Holmes remarked to Ms. Concordia that he did not know whether Ms. Concordia would be able to handle the increased workload "with your current situation."

15. Ms. Concordia responded to Mr. Holmes that she was unable to work full-time as much as she would like to do, because she was pregnant and had a 1-year-old child; she explained that her existing 4-hour schedule is what would work for her for the time being.

16. Ms. Concordia expressed her concern to Mr. Holmes that the District might lay her off; she explained that she really enjoyed her job, she loved the students and hoped to continue working with the District if possible.

17. On July 22, 2019, Mr. Holmes called Ms. Concordia and reported that he had discussed the situation with Ms. Wilson, and per their discussion, if Ms. Concordia was unable to work full-time, then she would need to submit her resignation from her job.

18. Ms. Concordia asked Mr. Holmes whether there was any other option to continue her employment with the District, because she would be exercising the maternity benefits associated with her ISP position in connection with her pregnancy, and she was relying heavily on those benefits being available to her for her upcoming maternity leave.

19. Mr. Holmes indicated that he would speak with Ms. Wilson again to see if there were other options or positions for Ms. Concordia at the School.

20. Before concluding his telephone conversation with Ms. Concordia on July 22, 2019, Mr. Holmes asked again that she not forget to send her resignation letter to him by email, since she had confirmed that she would be unable to work full time.

21. Later on July 22, 2019, Ms. Concordia had a conference call with Ms. Wilson and Mr. Holmes regarding her concerns, and the parties discussed options to continue her employment.

4

22. Ms. Wilson indicated that the only options she could offer to Ms. Concordia were to apply for a substitute position or to accept a reduction in daily hours to fill a 3.5-hour daily position.

23. Upon information and belief, neither of the alternate job options offered by Ms. Wilson included the maternity benefits that she knew that Ms. Concordia intended to exercise.

24. At the end of the July 22, 2019 conversation, Mr. Holmes again asked Ms. Concordia to submit her resignation.

25. Ms. Concordia declined Mr. Holmes' demand that she submit her resignation.

26. On July 23, 2019 Ms. Concordia sent an email to Mr. Holmes that reiterated that she was anticipating that she would be using her maternity leave benefit or short-term disability in connection with her pregnancy.

27. Ms. Concordia reminded Mr. Holmes in the July 23 email that she would lose her maternity benefits if she became a substitute or if her hours were reduced to 3.5 hours per day.

28. Ms. Concordia further pointed out to Mr. Holmes in the July 23 email that if she were forced to resign as he was demanding, she would lose her benefits altogether, and she might not even qualify for unemployment benefits.

29. On July 24, 2019, Ms. Wilson informed Ms. Concordia that they would post a 3-hour position to see if they could get someone to fill that position, in an effort to allow Ms. Concordia to remain at the School.

30. Ms. Wilson further inquired with Ms. Concordia about her due date and the approximate date that she would be taking maternity leave, so that the District could start looking for a substitute.

31. On July 25, 2019, Ms. Wilson left a voice message for Ms. Concordia which indicated that the District moving ahead with the plan to keep Ms. Concordia at her 4-hour position while the District posted the additional 3-hour position and started looking for a substitute for Ms. Concordia while she would be taking her maternity leave.

32. During the first week of August 2019, Ms. Concordia received a letter from the District regarding mandatory training for Para Educators.

33. On August 6, 2019, when Ms. Concordia attempted to log in to the District portal to sign up for the mandatory training, she was unable to access the system, including her District email account.

34. While the District's IT Department was looking into the issue regarding Ms. Concordia's inability to log into the District's portal or access her email account, Ms. Concordia completed the required Para-Educator training on August 12, 2019.

35. On August 13, 2019, after helping prepare the District for the upcoming school year, Ms. Concordia contacted the District's IT Department for assistance with unlocking her school account; Ms. Concordia had noticed that day that her name had been removed from the designated mailbox that she had been using at the School.

36. Ms. Concordia was shocked to learn from the IT Department that the District's system reflected that she was no longer a District employee and that she no longer had access to her account.

37. Ms. Concordia began crying and felt tremendous anxiety regarding her employment situation, particularly in the wake of the District's repeated prior requests that she resign from her position.

38. The IT Department informed Ms. Concordia that she was unable to access her information online through the District's "Employee Connections" link, angrily informing her that she was no longer an employee, so she could not use that link; Ms. Concordia felt humiliated.

39. On August 15, 2019 Ms. Wilson informed Ms. Concordia that they were still "working on the position" and were waiting to hear from HR.

40. On Friday, August 16, 2019 the District (through LuAnn Dwyer) reported to Ms. Concordia that everything had been fixed that Thursday night (August 15, 2019), and that she was "hired again."

41. Hugely relieved, Ms. Concordia worked from 7:30 to 11:30 am on August 16, 2019, and then called HR to verify that her access to the District's system had been restored.

42. To her surprise and dismay, Ms. Concordia learned from the District's HR Department on August 16, 2019 that there was no record that she had been re-hired.

43. Ms. Dwyer subsequently informed Ms. Concordia that she would need to submit a new application online; although Ms. Dwyer identified a job code for that application, Ms. Concordia then discovered that the job code was not showing anywhere on the District's online job list.

44. Ms. Dwyer then asked Ms. Concordia to enter a new job code (1056 - General Application), for which there was no position title or job description listed on the District's system, so Ms. Concordia did not know what position she was applying for.

45. At 2:39 pm on August 16, 2019 Ms. Dwyer called Ms. Concordia to demand that the application for the unknown position needed to be completed as soon as possible because she needed to leave the office by 3:00 pm that day, and if Ms. Concordia did not complete the

application on time, she would experience "more problems."

46. Feeling uneasy, Ms. Concordia hurriedly completed the application at 2:45 pm on August 16, 2019 and notified Ms. Dwyer that this was complete.

47. Ms. Concordia began to feel that, through the seemingly endless parade of red tape and the inconsistent and incomplete information regarding her unknown new position that was being furnished to her, the District was trying to force her to resign her employment - just as it previously had demanded that she do; this situation had become profoundly stressful for her.

48. On August 18, 2019 Ms. Wilson addressed Ms. Concordia's report that HR had confirmed that her last day was August 16, 2019 and that Ms. Concordia's employment was terminated by responding, "that position was terminated but now you are in a new position. Please see LuAnn in the morning. We completed all of this on Friday."

49. On August 19, 2019, Ms. Dwyer sent an email asking Ms. Concordia to submit her resignation once again; Ms. Dwyer also provided instructions on how Ms. Concordia would return her keys and key fob.

50. Ms. Wilson explained that as of August 20, 2019 Ms. Concordia officially was not holding any position, and was no longer an employee, so she would need to go through the recruitment process.

51. On August 20, 2019, Ms. Concordia went to the District's HR Department to review her personnel record, and confirmed that the District had indicated that her employment indeed had ended on August 16, 2019.

52. The District's HR Department (through Cheryl Appelgate, Technician-Employee Records) made several phone calls regarding Ms. Concordia's employment while she waited on

August 20, 2019, before informing Ms. Concordia that they were "putting all the information together" and stating that she would need to go through the recruitment process.

53.     A woman suddenly approached Ms. Concordia and identified herself as a representative of the School; when the two women went to her office, she informed Ms. Concordia that they were "putting together an offer."

54.     When Ms. Concordia asked what position they were creating, the School representative printed out a job description that had no title and no job ID.

55.     The representative further indicated to Ms. Concordia that they initially had been unable to locate her in the District's system because Ms. Concordia had used her maiden name on the application; Ms. Concordia responded that this should not have mattered, as the District already had her first name, middle name (which is her maiden name), email address, phone number and her social security number listed in the application in all of its existing records for her.

56.     When the District representative inquired on August 20, 2019 whether Ms. Concordia still wanted this unidentified job, after briefly consulting with her husband, Ms. Concordia responded that she could not accept a position that had not even been defined yet, explaining that she had been extremely stressed about the situation after learning on her own that she had been terminated, and after all of the back-and-forth and changing stories and lies regarding this seemingly ambiguous position that she needed to apply for as a terminated employee.

57.     Ms. Concordia then went upstairs to the District's Payroll Department to request a copy of her paystubs, where she was congratulated on her pregnancy; the Payroll representative excitedly touched Ms. Concordia's belly as she advised her how to follow up with Payroll to log her final work hours, since Ms. Concordia no longer had access to the District's system.

9

58. On August 27, 2019, Ms. Concordia sent an email to Ms. Dwyer regarding her outstanding work hours, as she had been instructed by the Payroll Department to do; Ms. Dwyer twice more asked Ms. Concordia to submit her resignation letter.

59. Ms. Concordia still has not been paid for approximately $330.00 in wages for hours that she worked during her final days for the District in August 2019.

60. Upon information and belief, the District's foregoing actions toward Ms. Concordia in July and August 2019 – including but not limited to terminating her employment - were driven by discriminatory animus that was based on her gender, and were specifically designed to prevent her from exercising her maternity benefits in connection with her pregnancy.

61. Upon information and belief, the District's foregoing actions toward Ms. Concordia in July and August 2019 – including but not limited to terminating her employment - were retaliatory in nature, and were in direct response to Ms. Concordia having engaged in a protected activity by notifying the District that she would be exercising her maternity benefits in connection with her pregnancy.

62. As a direct and proximate result of the foregoing events, Ms. Concordia suffered lost income and benefits, as well as severe emotional distress and humiliation, including damage to her reputation, and is still suffering emotional distress relating to these events to this day.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Gender Discrimination, in Violation of the Rehabilitation Act

63. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

64. Plaintiff satisfactorily performed the functions and requirements of her job at all

times relevant to this Complaint.

65. Defendant, either directly or by and through its agents, discriminated against Plaintiff because of her gender.

66. Defendant is liable for the acts and/or omissions of its agents and employees, including but not limited to Ms. Wilson, Mr. Holmes, and Ms. Dwyer.

67. During Plaintiff's employment, Defendant and its agents engaged in unlawful discriminatory employment practices against Plaintiff affecting the terms and conditions of Plaintiff's employment based on her gender.

68. Including through its termination of her employment, Defendant's unlawful employment practices set forth *infra* denied Plaintiff equal terms and conditions of employment and otherwise adversely affected her employment status because of her gender.

69. Defendant's unlawful employment practices were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

70. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

71. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

**Second Claim For Relief**
**Retaliation, in Violation of the Rehabilitation Act**

72. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

73. Plaintiff was subjected to retaliation for engaging in a protected activity, including being terminated from her employment after indicating that she would be exercising her maternity benefits in connection with her pregnancy, and after expressing concerns to the District that her continued employment might be in jeopardy, which would impact her maternity plans.

74. Plaintiff's protected conduct was a motivating factor in Defendant's retaliatory conduct, including its decision to terminate Plaintiff's employment.

75. Defendant's asserted reasons for its actions were merely pretext for illegal retaliation by Defendant and its agents.

76. Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

77. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

### Third Claim For Relief
### Willful Violation of the FLSA

78. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

79. Defendant failed and refused to pay Plaintiff's wages as required under the FLSA.

80. Defendant failed and refused to pay wages to Plaintiff in accordance with the minimum wage provisions of the FLSA.

81. Defendant knew that Plaintiff was covered by the provisions of the FLSA relating

to its payment of wages to her.

82. Defendant nonetheless failed and refused to comply with the provisions of the FLSA by refusing to pay Plaintiff's wages.

83. As a direct and proximate result of Defendant's failure, Plaintiff has incurred damages, including but not limited to at least $330.00 in unpaid wages, as well as attorney's fees and court costs.

84. Even though Plaintiff's final wages were due and payable, Defendant has failed and refused to pay such wages, despite being requested to do so by Plaintiff.

85. Pursuant to the FLSA, Defendant is liable to pay liquidated damages in the amount of 100% of Plaintiff's unpaid wages, as well as the payment of her attorney's fees and court costs.

## Fourth Claim For Relief
### Willful Violation of the Colorado Wage Act

86. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

87. Defendant failed and refused to pay Plaintiff's wages as required under the CWA.

88. Defendant failed and refused to pay wages to Plaintiff in accordance with the minimum wage provisions of the CWA.

89. Defendant persisted in said failure and refusal to pay Plaintiff's accrued and unpaid wages for more than fourteen (14) days following its receipt of a written demand for same that was issued on behalf of Plaintiff.

90. Defendant's failure and refusal to pay all wages due and owing to Plaintiff, in violation of the CWA, and in breach of the Agreement, was willful.

91. As a direct and proximate result of Defendant's violation of the CWA, Plaintiff has

incurred damages, including but not limited to unpaid wages, as well as attorney's fees and court costs.

92. Pursuant to the CWA, Defendant is liable for the amount of Plaintiff's unpaid wages, as well as a penalty in the amount of 125%, as well as the payment of Plaintiff's attorney's fees and court costs.

93. Pursuant to the CWA, Defendant's willful failure to pay Plaintiff's accrued wages renders it liable for an additional penalty in the amount of 50% of those wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant, and award her the following relief, to the fullest extent allowed by law:

i. Actual monetary damages for all injuries suffered by Plaintiff in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;
ii. Damages in the amount of Plaintiff's unpaid wages, plus liquidated damages and statutory penalties, pursuant to the FLSA and the CWA;
iii. Punitive damages on all claims allowed by law and in an amount to be determined at trial;
iv. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;
v. Pre- and post-judgment interest at the highest lawful rate; and
vi. Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of April 2021.

14

**MILLER AND LAW, P.C.**

**By: /s/ David J. Meretta**
David J. Meretta
Colorado Bar No. 44409
1900 W. Littleton Blvd.
Littleton, CO 80120
(303) 722-6500
(303) 722-9270 fax
djm@millerandlaw.com